WILLIAM A. REDD, Guardian of MARTIN J. KENDRICK, *vs.* THOMAS WOOD, THOMAS C. PINCKARD, JOSEPH ECTOR, JOHN S. WOOD, AUGUSTUS WOOD, MORTIMER ECTOR, RICHARD ECTOR, and ALLEN LIVINGSTON.

*Bill for Discovery, Relief, Ne Exeat, and Quia Timet,—Motion to dissolve Ne Exeat and Quia Timet, and dismiss Bill.*

1. A writ of *ne exeat* will not be granted, in favor of a person, who has no legal right to sue.

2. An administrator *ad colligendum* can bring no action.

3. The next of kin of a decedent cannot sue for his property, without administration.

4. A demurrer to a bill in Equity cannot be sustained, on the allegation of a mere matter of *fact.* This is the subject of plea, and answer, not of demurrer.

5. Where the guardian of a deceased minor has wasted the estate, and he and his securities are about to remove themselves and their property from the jurisdiction of the court; the next of kin may have a *quia timet,* to secure themselves.

This bill was filed, by William A. Redd, as the guardian of Martin J. Kendrick, a minor, against Thomas Wood, who is alleged to be the guardian of Mary Eliza Kendrick, and the other defendants, four of whom, to wit, Joseph Ector, Thomas C. Pinckard, John S. Wood, and Augustus Wood, are his securities, in which it is alleged, amongst other things, that John W. Kendrick, of Troup county, departed this life, leaving his two children, Martin J. and Mary Eliza, his only heirs and legatees, and that they were possessed of a large estate, of the value of forty thousand dollars. That the complainant, Redd, was appointed the guardian of Martin J. and the defendant, Thomas Wood, guardian of Mary Eliza; that the estate was divided, and the portion of Mary Eliza paid over to her said guardian. That in the year 1840, the said Mary Eliza died, leaving the said Martin, her brother, her only heir at law, and entitled to the whole of her estate; and that the said Thomas Wood has wasted most of said estate, and

[Redd, guard'n. *vs.* Wood & al.]

has become wholly insolvent, and has caused his negroes to be conveyed out of the the State, for the purpose of evading the payment of said estate; and that Joseph Ector, for the purpose of defrauding the said Martin J. and evading his liability, on said guardian's bond, has conveyed the whole of his property, consisting of land and negroes, to his two sons, Richard Ector and Mortimer Ector, without any consideration; and also that John S. Wood, another of the securities, has made a voluntary conveyance of his property, to Allen Livingston; and that it is apprehended by complainant, that said parties will remove said property without the limits of said State; which charge is also made, with regard to Augustus Wood. It is also stated, that the complainant, the guardian of the said Martin J. had made application for letters of administration, on the estate of the said Mary Eliza, which application is still pending; and prays a *ne exeat*, and that said parties be restrained from conveying or removing said negroes, until further order, &c.

The defendants now move to dissolve the *ne exeat*, and *quia timet*, and to dismiss the bill upon the following grounds:

" 1st. Because the same was improvidently granted by the Court.

2nd. Because the same was irregularly granted, in this; that said complainant shews no right, by his said bill, to maintain said suit, against said defendants; and that letters of administration have been granted to Joseph Ector and Richard Ector, two of the defendants, upon the estate of Mary Eliza Kendrick, the intestate, which letters were granted at the last July term of the Interior Court of Heard county, sitting for ordinary purposes; the said administrators giving bond and security, in terms of the Law."

I will first consider the question in reference to the writ of *ne exeat*. The writ of *ne exeat* is a prerogative writ, which is issued to prevent a person from leaving the realm.—2 *Story's Eq.* 686. A writ of *ne exeat* issues, for the purpose of obtaining security for a demand, from a person intending, whatever may be the cause, to leave the country, when the other party has not a legal remedy, and cannot hold him to bail.—2 *Maddox Ch.* 226. It is a rule that a writ of *ne exeat* issues, only upon a certain, equitable, money demand, at the instance of a plaintiff, who shews a title to sue.—2 *Maddox Ch.* 227.

And, further, it is said the affidavit must be as positive, as to the equitable debt, as an affidavit of a legal debt must be, to hold to bail.—*Ib.* 229. It is also necessary, that the plaintiff should swear, positively, that defendant is going abroad, or to some declaration of his, that he is. Let us then apply the above rules, to the facts of the case under consideration. There is no separate affidavit, the bill being sworn to in the usual form; and when we look to the facts, as charged in the bill, there does not seem to be that certainty and positiveness, either with regard to the amount of indebtedness, or the fact that the defendants are going abroad, to authorise the granting of this writ, by which the citizen is restrained of his natural liberty; which is therefore never granted, without great consideration. But there is another part of this authority, which is conclusive upon this branch of the case. The writ of *ne exeat* is issued only at the instance of a plaintiff, who shows a title to sue. It is a well established doctrine, that the next of kin to a deceased person cannot maintain a suit in Equity, for the recovery of the property of the deceased, without administering, though he be entitled to the property.— Bradford *vs.* Felder, 2 *McCord's Ch. R.* 168; *Paige's Ch. R.* 47. This plaintiff, having no title to sue, by reason of his not having taken out letters of administration, does not bring himself within the rule. I am therefore of opinion that, so far as the order issued in this case, authorises the issuing of a writ of *ne exeat,* restraining the liberty of the persons of the defendants, it is unsupported by authority, and should therefore be dissolved. With regard to the other branch of case, to-wit, that part of the order, which is more properly predicated upon that portion of the bill, denominated *quia timet,* I have found much more difficulty, in coming to a conclusion. Mr. Story says, in his Commentaries, 2d vol. 130, bills, *quia timet,* in equity, are in the nature of writs of prevention, to accomplish the ends of precautionary justice. They are ordinarily applied, to prevent wrongs or anticipated mischiefs, and not merely to redress them, when done. The party seeks the aid of a Court of Equity, because he fears (*quia timet*) some future probable injury to his rights or interests, and not because an injury has already occurred, which requires any compensation, or other relief. The manner, in which this aid is given by Courts of Equity, is dependent upon the circumstances. They interfere, sometimes, by the appointment of a receiver, to recover rents, or other income; sometimes, by an order to pay a pecuniary fund

[Redd, guard'n. vs. Wood & al.]

into Court; sometimes, by directing security to be given, or money paid over; and sometimes, by the mere issuing of an injunction, or other remedial process: thus adapting their relief to the precise nature of the particular case, and the remedial justice required by it. Now what is the anticipated mischief in this case, which the bill seeks to prevent? It is alleged, that Mary Eliza Kendrick has died intestate, and without issue; that her guardian, one of defendants, was at the time of, or previous to, her death, possessed of a large estate, to which the ward of complainant is entitled; that said guardian has wasted and squandered said estate, and is now insolvent; that he has colluded with Joseph Ector, one of his securities, and procured him to run his property out of the State; and that the said Ector, for the purpose of evading his liability, as security on the guardian's bond, has made a fraudulent and voluntary conveyance of his negroes and other property, to his sons; and that it is now apprehended, that they will run said property out of the State. Similar statements are made, as to apprehensions that the other securities will do the same. It is also alleged, that complainant has made application for letters of administration, on the estate of the said Mary Eliza, which application is now pending; and that it is apprehended, that these anticipated mischiefs will happen, before said letters can be granted. And the bill prays that these defendants may be restrained from doing these acts, until the further order of the Court. A party cannot go into a Court of Equity for relief, when he has a full, complete and adequate remedy at law. Then, taking all the facts charged in the bill to be true, I would enquire, what course could have been pursued at law, to remedy or prevent those anticipated mischiefs? I know of none. But it was contended by defendant's counsel, in the argument, that the complainant might have obtained temporary letters of administration, by application to the Clerk of the Court of Ordinary, and that he could then have commenced a suit, on the guardian's bond, and held the parties to bail; and *Toller's Law of Executors*, 254 and 404, was relied on, as authority to sustain the position, that a temporary administrator could sue. By an examination of this authority, it will be found that certain temporary administrators, to-wit, *durante minoritate, durante absentia, et pendente lite*, may maintain actions, for the recovery of debts due the deceased. But this power does not extend to such temporary administrators, as are constituted under an appointment by the Clerk of the Court of Ordinary, under our Stat-

ute ; who are appointed, after an application is made for letters, until the next Court only ; who are appointed, not as a matter of right, but only at the discretion of the Clerk, to collect and take care of the effects of the deceased. It will be found, by all the authorities on the subject, that the three kinds of temporary administrators, first mentioned, have various privileges attached to their appointment, which do not belong to an administrator *ad colligendum.* In *Toller's Law of Executors,* page 107, I find this authority : " The ordinary, " in default of persons entitled to the administration, may grant " letters, *ad colligendum bona defuncti,* and thereby take the " goods of the deceased into his own hands—and thus assume the " office of an executor or administrator, in respect to collecting " them : but the grantee of such letters cannot sell the effects, with- " out making himself an executor *de son tort.*" Chancellor Kent, in his Commentaries, vol. 2d, 335, when speaking on the subject of granting letters of administration, says : " If no one offers (that is, " applies) the surrogate must then appoint a mere trustee *ad colli-* " *gendum,* to collect and keep safe the effects of the intestate ; and " this last special appointment gives no power to sell any part of the " goods, not even perishable articles, nor can the surrogate confer " upon him that power." And Judge Blackstone, in his Commenta- ries, 2nd vol. 505, says, " The ordinary may grant his letters *ad col-* " *ligendum bona defuncti,* which neither makes him executor or " administrator ; his only business being to keep the goods in his safe " custody." All of these authorities go to shew, that an administra- tor *ad colligendum* is much more limited in his powers than an administrator *durante minoritate,* &c. and none of them say, that he has any power to sue. But there is an authority in 2 *P. Wm.* 584, which is directly in point, and goes fully to establish the position, that such person has not the right to sue. The question there was, whether an administrator *pendente lite* could sue for the recovery of the goods of the deceased. And in the report of the case this lan- guage is used, by the counsel, who contended that the administrator had the right—" But it would very much lessen and take off from the " use and benefit of these administrations, if it should be adjudged " that none, by virtue thereof, were capable of suing for and recover- " ing the debts of the deceased : This construction would reduce the " grant of letters of administration *pendente lite,* to no more than " letters *ad colligendum bona,* &c." by which argument it was fully

[Redd, guard'n. *vs.* Wood & al.]

admitted to be the settled doctrine, that such an administrator had no power to sue. But suppose he has the right to sue. It must be recollected that, according to our Statute, the granting of such temporary letters is a matter of discretion with the clerk; and it is therefore by no means certain, that they would have been granted to the complainant, in this case, if application had been made. What, then, was the remedy, proper to be pursued, by the complainant in this case, at the time of filing of this bill, for the purpose of protecting and securing the rights and interests of his ward? He could not have sued on the guardian's bond, even if he had applied for and obtained letters *ad colligendum:* For such an administrator cannot sue. He could not have brought an action in the name of his ward, as next of kin; for the next of kin cannot maintain a suit, for the recovery of personal property. He was not entitled to a writ of *ne exeat*, as we have already seen; because, to maintain such a suit, the party must have title to sue. What then?—Shall we say that the party has no remedy at all? No: this will not do. Every wrong is said to have its remedy, and every injury its appropriate redress. As before remarked, a bill *quia timet* is used to prevent wrongs, or anticipated msschiefs, by a party, who fears some future injury will probably be done to his rights or interests.

The greatest difficulty, which presents itself to my mind, is the right of the Court to interfere, by its process, with the private property of the defendants; and nothing but the absolute necessity of the case, which arises from the total absence of every other remedy, would, in my opinion, authorise the Court to do it. If the property in the possession of defendants was the specific property of the deceased, to which the ward of complainant is entitled; there would be no difficulty. But Judge Story, in his Commentaries, 2nd vol. page 130, when speaking with regard to estates of deceased persons, says, "If there is danger of waste of the estate, or collusion between the "debtors of the estate and executors or administrators, whereby the "assets may be subtracted; Courts of Equity will interfere and se- "cure the fund; and in case of collusion with debtors, they will order "the latter to pay the amount of their debts into Court." Now, although this is not an authority precisely in point, yet there is a strong analogy, between it and the facts charged in the bill. There is a charge of collusion, between the guardian and his securities, to

defraud the ward of complainant, and that, for this purpose, they have run the property of the guardian out of the State, and that the securities, whose property would ultimately be liable for the payment of this demand, have conveyed it fraudulently, for the purpose of evading said liability; and that there is apprehensions that it will be removed from the State also. Then, if it be conceded, that the Court has no right, under this state of facts, to restrain the defendants, by its process, from conveying their persons and property, beyond the limits of the State; there would certainly be a great defect of justice; and the defendants can, regardless of their obligations and liabilities to this infant child, in open day, remove themselves and every article of property, which they possess, to parts unknown, with perfect impunity. I think a proposition, so startling as this, would not be seriously contended for.

I am therefore of opinion, that the facts charged in this bill, make such a case as entitles the complainant to come into a Court of Equity, and invoke its powers, to restrain the defendants from removing their property beyond the jurisdiction of this Court, until his ward's interest can be protected, by a legal representation of the estate of his deceased sister. And I am also of opinion, that, so far from the fact, that the plaintiff has not a legal right to sue, being a ground of objection to this proceeding; this is the strongest reason, which can be urged in its favor. Otherwise the party would be left without remedy.

The second ground, upon which the motion is based, is because letters of administration have been granted to Joseph Ector and Richard Ector, two of the defendants, upon the estate of Mary Eliza, which letters, it is stated, were granted at the July term, 1841, of the Inferior Court of Heard county. This ground involves a matter of fact, which seems to have arisen since the filing of the bill, and cannot therefore be any valid reason, why the bill should not have been sanctioned, originally. But, if the fact be true, it is proper subject matter for a plea, and not for a demurrer. A plea has also been filed in this case, embodying the matter contained in this ground of the motion. But, as it was alleged by complainant's counsel, that there had been no service of notice of the filing of the plea, the merits of the plea were not gone into upon the argument, and therefore it is not deemed proper to make any decision in regard to the plea,

[Redd, guard'n. *vs.* Wood & al.]

as the complainants may desire to take issue upon it, and shew that the facts therein contained are not true.

It is therefore ordered, that the motion to dismiss the bill be overruled, and that the motion to dissolve the writ or order, restraining the defendants from conveying the said negroes, and removing them beyond the jurisdiction of the Court, be also overruled ; and that the motion, to dissolve the writ of *ne exeat*, so far as it restrains the personal liberty of the defendants, be sustained.